IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHRISTOPHER J.W.[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 25-cv-232-RJD[2] |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM and ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

**Procedural History**

In March 2022, Plaintiff applied for DIB and SSI, claiming disability beginning July 24, 2021. Tr. 17. After a video hearing held on October 18, 2023, the Administrative Law Judge ("ALJ") issued an unfavorable decision on December 12, 2023. Tr. 14-30, 31-54. The ALJ's decision denying the claims became final and appealable on January 17, 2025, when the Appeals Council declined Plaintiff's request for review. Tr. 1-3. *See* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481 (describing effect of Appeals Council's denial of review).

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). Docs. 9, 14.

**Issues Raised by Plaintiff**

Plaintiff raises the following issue:

1. The ALJ failed to account for the "total limiting effects" of Plaintiff's impairments pursuant to 20 C.F.R. §§ 404.1529 and 404.1545(e), resulting in a decision that is not supported by substantial evidence.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statute.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either Step 3 or Step 5 leads to a finding that the plaintiff is disabled. A negative answer at any Step, other than at Step 3, precludes a finding of disability. The plaintiff bears the burden of proof at Steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. Pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. Pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Importantly, the Court's scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,  587 U.S. 97, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal citations omitted). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)*.* However, while "judicial review of the decisions of administrative agencies is deferential, it is not abject." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010). The Court does not act as a "rubber stamp" for the Commissioner. *Ehrhart v. Sec'y of Health & Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992).

## The Decision of the ALJ

The ALJ followed the five-Step analytical framework described above. The ALJ found that Plaintiff meets the insured status requirement through December 31, 2026. Tr. 17. At step two of the sequential evaluation mandated by the regulations, the ALJ found that Plaintiff has "severe" cervical spondylosis, coronary artery disease status post STEMI and stenting, and right

nephrectomy. Tr. 20. The ALJ then formulated the residual functional capacity ("RFC") to perform the full range of light work. Tr. 20. The ALJ did not incorporate in the RFC any additional limitations. Tr. 20. Based on this RFC, the ALJ found that Plaintiff cannot perform his past relevant work. Tr. 23. At Step 5, he concluded, however, that Plaintiff was not disabled because, based on his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR § 404.1569, 404.1569a, 416.969, and 416.969a). Tr. 23-24.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### 1. Agency Forms

Plaintiff filed an initial claim for disability in March 2022, due to the following illnesses, injuries, or conditions: kidney removal, arthritis, kidney cancer in remission, clogged arteries, and headaches. Tr. 21, 55, 62.

### 2. Plaintiff's Testimony

At the hearing, Plaintiff testified that he had his right kidney removed due to a cancerous mass. Tr. 21, 42, 44. He has followed up routinely since and is cancer-free. Tr. 44. He stated he is unable to work due to pain from his surgery, stating he feels like it is ripping out when he lifts something. Tr. 21, 45-46. He indicated that he had told his doctors about his issues with continuing pain, and they indicated that the pain may never go away, and there was nothing they could do. Tr. 42. He reported pain with lifting, bending, stooping, and anything that puts stress on the

midsection, with pain of 9/10-10/10. Tr. 21, 45-46. He has a history of heart catheterization and stenting, follows with cardiology every six months, and complained of chest pain with strenuous activity, walking, and climbing. Tr. 21, 45-47. He alleged using nitroglycerin once per month. Tr. 21, 45-47. The claimant alleged problems/blockage in his neck, migraines once per week, and arthritis in his neck and spine. Tr. 21, 47, 49-50. He reported symptoms go to his arms and hands with pain and numbness down to his fingers, as well as difficulty holding and grasping things. Tr. 21, 47-48. He alleged he could not reach overhead with his right arm and leg swelling due to his heart condition requiring elevation. Tr. 21, 48. Plaintiff lives with his sister, who works outside the home. Tr. 21, 39-40, 43. He completed high school. Tr. 21, 43. He hangs out around the house, does laundry, cleans, shops, drives, and spends time with family. Tr. 21, 43. He stated he no longer rides his motorcycle or goes to the racetrack since the surgery. Tr. 21, 43.

### 3. Relevant Medical Record

Plaintiff established care in mid-October 2022 with complaints of pain in his right shoulder and right arm for the past month, numbness and tingling, as well as dropping things. Tr. 22, 975.[4] He denied taking any medication for his symptoms. Tr. 22, 975. His vital signs were stable. Tr. 22, 976. The claimant demonstrated a good range of motion but had pain with movement. Tr. 22, 976. Phelan's test was negative, with strength and grip being equal bilaterally, but after the assessment, Plaintiff experienced increased tingling down the right arm. Tr. 22, 976. Imaging was ordered, and he started Voltaren gel. Tr. 22, 976-981. Upon follow-up in November 2022, Plaintiff stated his pain had been improving, and he did not experience pain as often as before. Tr. 22, 982. His examination was normal, and his X-rays were negative. Tr. 22, 983, 985-86. Plaintiff reported

---

[4] The Court recites only Plaintiff's medical record relating to Plaintiff's cervical spondylosis because the Plaintiff's medical record regarding his other conditions is not relevant to the Court's analysis.

very little pain, which he treated with Voltaren gel and BioFreeze. Tr. 22, 983. He wanted to wait for further imaging. Tr. 22, 983.

On January 13, 2023, Plaintiff presented to the emergency department for severe pain from his right shoulder down into his fingertips that had lasted approximately a week. Tr. 23, 990. He denied dropping anything but reported constant pain. Tr. 23, 991. His shoulder range of motion was decreased. Tr. 23, 991. His grip strength was slightly weaker on the right side compared to the left. Tr. 23, 991-92. He endorsed pain with cervical spine range of motion. Tr. 23, 994. He underwent a cervical spine MRI for neck pain associated with right arm numbness. Tr. 23, 988. MRI demonstrated cervical spondylosis at C6-C7, multilevel foraminal stenosis secondary to uncovertebral joint and facet arthritis. Tr. 23, 988. The radiologist believed it was likely affecting the exiting right C7 nerve root. Tr. 988. In February, Plaintiff underwent a cyst removal, and the physical examination of his extremities was unremarkable. Tr. 23, 1003, 1009-10. The provider noted that Plaintiff was given information for an upcoming appointment to neurosurgery regarding his cervical issues. Tr. 997-98.

### 4.  **Medical Opinions**

The two state agency reviewing medical consultants, John Peterson, M.D. and Jennifer Western, M.D., determined that there was insufficient evidence to evaluate the claim. Tr. 23, Tr. 56-57, 62-64, 69-73, 74-79. They also noted: "There is not needed current ROM, gait, lab work, description of extremity that is needed to determine if the claimant meets or equals a listing. There is not enough current information to establish a formal RFC as well. Overall there is insufficient information." Tr. 57, 63, 71, 77. The ALJ found both opinions unpersuasive and concluded that there was sufficient evidence supporting his RFC finding. Tr. 23.

**Analysis**

Plaintiff challenges the ALJ's failure to incorporate any manipulative limitations in the RFC resulting from Plaintiff's cervical spondylosis and nephrectomy. Doc. 15, pp. 6-7. He further faults the ALJ for insufficiently discussing the grounds for such omission, thus failing to build a logical bridge between the evidence and his RFC assessment. The Court agrees with the latter.

When assessing a claimant's RFC, the ALJ must determine "what an individual can still do despite . . . her limitations based upon medical evidence as well as other evidence, such as testimony by the claimant. . . ." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (cleaned up and internal citations omitted). The ALJ's RFC assessment must be based "on all of the relevant evidence," including medical history, medical signs, and laboratory findings, the effect of treatment, reports of daily activities, and medical source statements. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). The Seventh Circuit has repeatedly emphasized that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record. . . ." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). When formulating an RFC, the ALJ must include a narrative discussion of how the evidence supports each conclusion and cite specific medical facts and non-medical evidence. SSR 96-8p. Remand is required if the ALJ's decision lacks evidentiary support or is so poorly articulated that it prevents meaningful review by the court. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Further, the ALJ's assessment of a claimant's reports regarding the "intensity, persistence, and limiting effects of" her subjective symptoms will not be disturbed unless it is "patently wrong,"

meaning that it "lacks any explanation or support." *Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *5 (7th Cir. Aug. 19, 2021) (citation and internal quotation marks omitted). At the same time, when that assessment rests on "objective factors or fundamental implausibilities rather than subjective considerations," such as the demeanor of the claimant, the court has "greater freedom to review" that assessment. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation and internal quotation marks omitted). Further, the ALJ may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p (S.S.A. Oct. 25, 2017). While the "lack of objective support from physical examinations and test results is relevant[,] . . . an ALJ may not discredit pain complaints solely because they lack objective corroboration." *Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018) (citing *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014); *Parker*, 597 F.3d at 921-22. An ALJ must "adequately explain" whether the claimant's report of subjective symptoms is persuasive or not and discuss "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); SSR 16-3p.

Here, Plaintiff alleged arthritis in his neck and spine, with pain radiating to his arms and hands, numbness down to his fingers, as well as difficulty holding and grasping things, and inability to reach overhead with his right arm Tr. 21, 47-50. At Step 4, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the

record. Tr. 22.

The ALJ went on to discuss Plaintiff's medical records, including those relevant to his cervical spondylosis. Tr. 22-23. The ALJ concluded that light exertion work was supported by Plaintiff's normal physical examinations, few complaints, imaging, and generally conservative treatment, and overall improvement status post nephrectomy. Tr. 23. Specifically, as to Plaintiff's upper extremity limitations, the ALJ pointed out that Plaintiff's "bilateral upper extremities generally demonstrated normal strength, range of motion, and grip with little abnormality." Tr. 24. The ALJ further found that Plaintiff's testimony was generally inconsistent with the medical evidence of record, explaining that treatment records did not fully support his allegations, including those for his upper extremity symptoms and pain. The ALJ reasoned that Plaintiff's overall upper extremity examinations were normal with few abnormalities, and he typically denied pain there with no indication of 9/10-10/10 pain reports to his providers.

The ALJ's review of Plaintiff's medical record substantially supports his rejection of Plaintiff's reports of inability to lift his arm overhead. Plaintiff testified that he was unable to reach overhead with his right arm, but as the ALJ pointed out, Plaintiff's medical examinations exhibited an overall normal range of motion in October 2022, November 2022, and February 2023. Tr. 22-23, 275-76, 985-86, 1009-10. Only in January 2023, Plaintiff's physical examination showed decreased shoulder range of motion and slightly weaker grip strength, but by February, the physical examination of his extremities was normal. Tr. 23, 991-92.

Likewise, while Plaintiff's reports of numbness down to his fingers, as well as difficulty holding and grasping things, were reflected in his October 2022 medical record, there were no similar reports in November 2022. In January 2023, he declined dropping things, even though he

reported severe pain and exhibited slight weakness in his right side grip. Again, by February 2023, his upper extremity physical examination was normal. The ALJ reasonably concluded that Plaintiff's subjective allegations as to numbness in his fingers and difficulty holding and grasping things were not fully supported by the record.

However, the ALJ erred in his assessment of Plaintiff's allegations of pain attributable to his cervical spondylosis. The ALJ concluded that Plaintiff's treatment records did not fully support his pain allegations, and specifically with respect to his upper extremity, he reasoned that Plaintiff "typically denied pain *there* with no indication of 9/10-10/10 pain reports to his providers." Tr. 23 (emphasis added). However, Plaintiff did not testify that his pain in the upper extremity was at that level. Rather, the 9/10-10/10 level of pain referred to "lifting, bending, stooping, [or] anything that puts stress on the *midsection*." Tr. 21, 45-46 (emphasis added). Accordingly, the Court understands Plaintiff's testimony to be that the 9/10 - 10/10 level of pain was a symptom related to his nephrectomy, not to his cervical spondylosis. Plaintiff testified that he has pain in his right arm and numbness due to his cervical spondylosis, but did not specify the level of pain there. Tr. 48. Accordingly, any inconsistency between the medical records and Plaintiff's testimony as to his level of pain is attributable to the ALJ's mischaracterization of Plaintiff's testimony.

Likewise, the ALJ's conclusion that Plaintiff typically denied pain in that area is not supported by the cited record and his analysis. Looking at the cited medical records, there were complaints of pain in October 2022, while Plaintiff denied taking medication for his symptoms. Tr. 23. In November 2022, Plaintiff stated that his pain had improved, that he did not experience pain as often as before, and that he treated his pain with Voltaren gel and Biofreeze. Tr. 22. Because his pain had improved, he postponed further imaging. Tr. 22. Yet, improvement of pain does not

amount to a "denial of pain." In any case, by mid-January 2023, Plaintiff presented to the emergency department with severe pain from his right shoulder down into his fingertips that had lasted approximately one week, and he underwent a cervical spine MRI that demonstrated cervical spondylosis at C6-C7, multilevel foraminal stenosis secondary to uncovertebral joint and facet arthritis. Tr. 23, 988-90. The ALJ failed to discuss that Plaintiff's pain was so severe that he had to visit the emergency department. Tr. 23. The ALJ also failed to consider the radiologist's opinion that those findings "likely affect the exiting right C7 nerve root." Tr. 988-89. And while in February 2022 the physical examination of his extremities was unremarkable, this medical visit was for cyst removal, which does not appear relevant to Plaintiff's cervical spondylosis at C6-C7. Tr. 23, 1003, 1009-10. Still, the provider noted that Plaintiff was given information for an upcoming appointment to neurosurgery regarding his cervical issues, which the ALJ also did not discuss. Tr. 998. Overall, the ALJ's discussion of the medical record does not support his conclusion that Plaintiff "typically denied pain" in his upper right extremity.

The ALJ did not rely on any other evidence to reject Plaintiff's reports of disabling pain resulting from his cervical spondylosis. The ALJ found the state agency consultants' opinions, which had found insufficient evidence to evaluate the claim, unpersuasive. Tr. 23. *See Sarah R. v. Kijakazi*, No. 322CV00088MPBMJD, 2023 WL 6370506, at *3 (S.D. Ind. Sept. 30, 2023) (reversing an ALJ's decision due to failure to build a logical breach where the ALJ had rejected the opinions of the state agency medical consultants that "there was insufficient evidence to evaluate" the claims and found not exertional limitations despite the claimant's persistent complaints of shoulder pain, MRI imaging of a tear, and the absence of any medical opinion to the contrary). The ALJ further did not discuss whether Plaintiff's daily activities were consistent with

his allegations of pain in his upper right extremity. The ALJ did reference that light exertion work was supported by "generally conservative treatment." Still, it is unclear if that conclusion was related to Plaintiff's pain from his cervical arthritis or his nephrectomy. Tr. 23. ("Light exertion work is supported by the claimant's normal physical examinations, few complaints, imaging, generally conservative treatment, and overall improvement status post nephrectomy"). In any case, Plaintiff's conservative treatment of his pain in November 2022, with Voltaren gel and Biofreeze, did not negate the reports of more severe pain later in January that required treatment at the emergency department.

In sum, here, the ALJ disregarded Plaintiff's allegations of pain associated with his cervical arthritis without adequate explanation or support. The ALJ may have assessed that Plaintiff's level of pain did not warrant additional exertional limitations beyond limiting Plaintiff to light-duty work. However, the ALJ did not state that in his decision. Rather, he discredited Plaintiff's testimony, relying on an inconsistency of his own making and a conclusion as to the Plaintiff's complaints of pain that is inconsistent with the cited record.

Accordingly, the Court finds that the ALJ's assessment of Plaintiff's subjective reports of pain associated with his cervical arthritis is patently wrong. *Weber*, 2021 WL 3671235, at *5 (the ALJ's assessment of a claimant's reports regarding the "intensity, persistence, and limiting effects of" her subjective symptoms will not be disturbed unless it is "patently wrong," meaning that it "lacks any explanation or support"). Further, the ALJ failed to build a logical breach between the evidence and his conclusion that Plaintiff's pain associated with his cervical arthritis did not warrant additional limitations in his RFC assessment. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (The ALJ fails to build the requisite logical bridge where he relies on evidence that "does

Page **12** of **13**

not support the propositions for which it is cited"). Accordingly, remand is warranted. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

<u>**Conclusion**</u>

The Commissioner's final decision denying Plaintiff's application for disability insurance benefits and supplemental security income is **REVERSED** and **REMANDED** to the Commissioner for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: March 26, 2026**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**